And the Court will move on to the next argument. Dr. Blaine Leeds and Smile Direct v. Adolphus Jackson and other Cross Appellees and Appellants. And Robert Ashby Pate is here for the Appellants and Cross Appellees. Matthew Howard Lemke is here for the Appellees. And as amicus curiae for the government, Macon Delrahim is here. And so Mr. Pate, are you ready to begin with your argument? Yes, Your Honor, I am. May it please the Court, my name is Ashby Pate, and along with Logan Matthews, I represent the Board of Dental Examiners of Alabama and their appeal against Smile Direct and Dr. Leeds. The issue in this case, Your Honors, is very simple, but it's very important for our federal system, and it's this. How much must a sovereign state really do to provide realistic assurance to this Court that one of its agencies, which as a matter of law in this circuit is an arm of the state of Alabama, may go ahead and regulate the health and safety and welfare of its citizens without being hauled into court and essentially audited by a private company to defend the allegedly anti-competitive effects of a facially neutral regulation, especially when that private company failed to avail itself of one of the review mechanisms that Alabama put in place precisely to ensure that the state followed the Supreme Court's guidance in North Carolina Dental? That's the issue that this Court must decide today. Smile Direct is asking this Court to let it depose lawmakers and legislative staff and to conduct what is essentially a de novo private review of Alabama's regulatory procedures, but that's not how it's done. Smile Direct doesn't get to audit the state of Alabama, and neither does the FTC, and both of their arguments in support of their position fail. First, they argue that we aren't allowed to appeal now, that they are entitled to this kind of searching discovery, but they're wrong. Second, they argue that we haven't adequately shown active supervision under Mid-Cal and North Carolina Dental, and so therefore they need some more discovery to show that we haven't been actively supervised. I want to address both of those issues in turn. First, I want to talk about timing. There are three reasons why this appeal satisfies the collateral order doctrine here in the 11th Circuit, and it's three 11th Circuit cases, commuter transportation, Danner v. Hillsborough County, and this Court's very recent decision in diverse power. Commuter transportation was a 1986 decision which held that the denial of Parker immunity at the summary judgment phase was immediately appealable under the collateral order doctrine, and it did so because it said that Parker immunity is immunity from suit, not just liability. Then in 2010, this Court in Danner v. Hillsborough County held that the denial of Parker immunity at the motion to dismiss stage, just like this one, was immediately appealable for the same reason, that it was immunity from suit, not just liability. And then just last year, less than a year ago, in August, this Court decided its diverse power decision, and it held in that case, and I quote, we happen to think commuter transportation was decided correctly, and it went on to say, it went on to directly say that we think it's clear that state action immunity is a form of immunity from suit, not merely from liability, and denials of immunity from suit, like denials of sovereign and qualified immunity, are immediately appealable under the collateral order doctrine, end quote. So Smile Direct says that these cases don't apply for two reasons. First, they say, even if it's good law, they don't really compel the Court to allow this appeal, but I would submit that there is nothing more compelling than three controlling cases in this circuit. And the second argument they make is that the district court's provisional ruling somehow makes the order from which we appealed non-final. But here's why that's wrong. Those three cases, one of which was Danner, which was decided on a motion to dismiss, held uniformly that Parker immunity is immunity from suit. So a self-styled provisional ruling, in this case the district court's disclaimer that it would definitively rule at a later date, still definitively denies the Board the immunity to which they are entitled right now. Under those three cases, this Court has jurisdiction to hear this appeal right now. As to the merits, Smile Direct's second argument that they are entitled to more discovery because the Board hasn't yet satisfied the active supervision requirement, they're wrong on that, too, and it's for two primary reasons. One, the Board doesn't have to show active supervision at all. It is an arm of the state as a matter of law under this circuit's jurisprudence in Brasiglio, which is a 2012 case. So they are relieved from that requirement. Now, Brasiglio was decided for purposes of 11th Amendment immunity, as it relates to the Board of Dental Examiners making a certain employment decision. Smile Direct argues that, well, this is a different kind of immunity, and so the Board can be an arm of the state for purposes of making an employment decision, but not for performing its essential function. But to accept that interpretation would be to countenance a very unworkable jurisprudence. I mean, the notion that the Board... This is Judge Wilson. In order to accept your argument, wouldn't we have to disregard the Supreme Court's opinion in California Retail v. MIDCALL? No, Your Honor, we would not. I'm trying to figure out if there are enough facts in the record to determine the second prong of the MIDCALL test. Can you elaborate on that? Yes, I'd be happy to. Our first argument is that we don't have to... Especially at the motion to dismiss stage. Yes, Your Honor. Our first argument is that we don't have to satisfy the second part of MIDCALL because this is really a Hoover case, not a MIDCALL and NC Dental case. But to the extent that this Court has concerns that there's not enough facts in the record to determine active supervision, we simply disagree. All that MIDCALL and its progeny, NC Dental, held was that you have to show realistic assurance that the active supervision prong was satisfied. And here we have more than provided realistic assurance with a factual record. We attach to our motion to dismiss, and it is properly before this Court and never stricken... Don't we have to get past the pleadings in order to make that determination, Counsel? I mean, we're here on the denial of a motion to dismiss, a 12B6 motion to dismiss. Yes, Your Honor, and there are two types of those motions to dismiss, as this Court well knows. A facial motion to dismiss and a factual motion to dismiss. And we styled ours as a factual motion to dismiss and attached what we believe are pieces of factual evidence that were central to the claims of the plaintiff and which provide that realistic assurance now. And to me, that goes in line with what commuter transportation and all three of the cases I previously mentioned held, which is that it is immunity from suit and that the immunity question should, in fact... This is Judge Corrigan. The attachments went to the recent amendment to the regulations, right? Yes, Your Honor. And I guess my question was... Counsel, two-minute warning. I guess my question was, let's assume that regulation had never even... The amendment had never even happened. Would the Board still have sent these cease-and-desist letters to Smile Direct? Aren't we really talking about a broader inquiry in this case and to focus on just that amendment to the regulations seems like you might not be looking exactly at the right place. At least that was my concern. What's your response to that? That's a good concern, Your Honor. And what I would say is that the court's review here is really of the statutory scheme itself, and that is a de novo review. Alabama set up an antitrust review and a statutory scheme, which this court can review de novo, and it is right in there in the Alabama Code in which the Alabama legislature explicitly stated it intended to provide immunity to its state agencies, to the Board of Dental Examiners, and explicitly cited North Carolina Dental. So to answer your question, you don't even really have to look at the transmission that the Board sent to the Legislative Services Agency to show that the procedures that were in place were followed and that those procedures themselves provide realistic assurance that the state of Alabama intended to insulate this board from immunity and followed the procedures that it set out. And so the transmission and the memo is sort of the conclusion of that procedure, but it's not necessarily dispositive. But we attached it there because... Your time has expired. You can finish your answer. The bottom line, Your Honor, is that the memo is the conclusion of that procedure, but it is not dispositive, and it was attached to show and was not stricken from the record that the procedures worked as they were designed. Thank you. All right, we'll hear from Mr. Lemke on behalf of Dr. Leeds and Smile Direct. I may have pleased the Court. This is Matt Lemke, appearing on behalf of Dr. Leeds and Smile Direct. And, Your Honor, I want to begin with the fact that this Court lacks appellate jurisdiction over this appeal. This Court in Miccosukee Tribe said that the criteria that the Supreme Court has set forth for application of the Collateral Order Doctrine to an appeal has to be stringently applied in every case. And one of those criterion is, was there a conclusive determination made? This is Judge Corrigan. And I read your arguments, and I saw you put a lot of effort into them. And then I read footnote one in Diverse Power, and I'm just having a hard time understanding how you can be making this argument in light of that footnote one, which addresses the issues you were talking about and comes down pretty hard on the idea that the Eleventh Circuit allows interlocutory appeals of denials of Parker immunity. Judge, there's no question that the Eleventh Circuit in the line of cases culminating in Diverse Power says it is possible to have a Collateral Order Doctrine appeal. But what this Court has never held is that any and every ruling on a Parker immunity question is automatically eligible for a Collateral Order Doctrine appeal. And in Diverse Power, the decision on the motion to dismiss was made on a legal point as a matter of law. Never has this circuit, and I'm unaware, never has any court held that at the motion to dismiss stage, if there is a factual dispute that prevents the court from making a conclusive determination, and the court says it's going to revisit it, that nonetheless the conclusive determination prong should be deemed satisfied. That simply is not the law. What's the difference? You know, this happens in qualified immunity kind of all the time, right? You can get a denial of qualified immunity on a motion to dismiss, and then facts are developed, and then you can have it brought up at summary judgment, and it can be litigated again. And what's the difference here between that analogy? Well, I think the Swint v. Chambers County Commission case from the Supreme Court says that if an initial ruling is expressly tentative, it's not a conclusive determination for Collateral Order Doctrine purposes. And we've cited cases from the First, Third, and Fourth Circuits, I believe, all of which have held that an immunity determination at a motion to dismiss that goes off on a factual issue does not trigger the automatic appeal for purposes of the Collateral Order Doctrine issue. So the bottom line is we don't see how there can be a conclusive determination having been made, and frankly, it would make little sense from a systemic perspective to presume that it's been satisfied, because as Judge Wilson alluded to a few minutes ago, this case comes up on a 12B6 standard. And that leads me into my next argument, which is the district court was plainly correct in saying that the active supervision prong of the MIDCAL analysis was not satisfied here. The plaintiff, or rather the defendant, is bringing a motion to dismiss. Under the motion to dismiss standard, all facts as pleaded in the complaint are presumed true. And at paragraph 56 of the amended complaint, Smile Direct Club and Dr. Leeds said, or argued, or actually pleaded, that any review that occurred by the state of Alabama here was perfunctory, ministerial, and non-substantive. And the district court correctly said, well, that's the end of the matter. And while the court assumed without deciding that it could consider the extrinsic evidence to which the board members referred a minute ago, as the district court concluded, and we would note, as we argued in the district court, that was not properly authenticated and cannot be considered. But the district court said, even if I consider it, it doesn't get them anywhere because it shows that, in fact, the process that had been set up by the state of Alabama was not followed, or it was not completed. No substantive review occurred because of the inexplicable conclusion by the Legislative Services Agency staffer that there was no anti-competitive effect to the rule. Of course, our complaint alleges repeatedly that there was an anti-competitive effect, and so that had to be taken as true, which means there had to be a substantive review that did not occur. And, of course, the district court didn't even address, reserve the question of whether the fact that the Legislative Services Agency staffer did not have the right to detail or modify meant that that person's analysis alone could satisfy the active supervision requirement. As the United States and FTC point out in their amicus brief, that can't possibly be the case. Mr. Lemke, this is Jill Pryor. Let me ask you a question about the Supreme Court's decision in Patrick which concerned whether there was active supervision. The Supreme Court said the inquiry is whether state officials, quote, have and exercise power, end quote, to review the particular acts at issue. Is the question whether there's a... I think what Mr. Pate is arguing is that the fact that a review process is set up is sufficient, and it seems to me that you're arguing about whether the review actually occurred. What is the proper inquiry there? The proper inquiry is spelled out by the Supreme Court in the North Carolina Dental Board case is that the mere fact that review is available is not sufficient. There actually has to be an exercise. As the Supreme Court said, you have to possess and exercise, I think, was the exact language. And so the question is, did they exercise it? And here, as the district court found, even if you consider... they did not perform a substantive review, but even if you consider the extrinsic evidence, it shows that, in fact, they did not conduct the substantive review. All they did was say there was no anti-competitive effect, which short-circuited the entire analysis. Counsel, this is Judge Corrigan. If I could ask you the same question I asked your opponent, why is the focus so much on this LSA memo and on this amendment to the regulation? Isn't this a broader question of whether the board is acting anti-competitively and there's statutory requirements, there's other regulations, there's supervision regulations which predate the amendment? So why is the focus just on this particular amendment to the regulation? Well, I think the focus has been on that because that was sufficient for the district court to decide the case. But, Judge, you're exactly right. The question is whether the board's conduct at large was actively supervised, and we don't think it was. We certainly alleged that the cease-and-desist order that they sent was done without any review by the state. So it's a broader analysis, but I think, as the district court found, you don't really have to get beyond the question of the actual amendment to the rule because they plainly did not conduct any active supervision of that. And frankly, the essence of the board member's argument is you should take the state at its word because it created these procedures, and this goes to Judge Pryor's point a moment ago, because you created the procedures, you should assume that the state followed them. And that would turn the entire analysis, as spelled out in the line of cases culminating in North Carolina Dental Board, on its head. I'll say that the argument by the board members that they're not subject to the active supervision requirement flies squarely in the face of the Supreme Court's express holding that when you have a board composed of active market participants, such as you unquestionably have in this case, you must satisfy the active supervision requirement. And as I noted a minute ago, the active supervision requirement, as the Supreme Court said, the question is whether the state's review mechanisms provide realistic assurance that the non-sovereign actor's anti-competitive conduct promotes state policy rather than merely the party's individual interests. And, Judge Corrigan, that goes to your point. It's the overall conduct, one aspect of which in this case was the implementation of the anti-competitive rule that, as we allege in the complaint, was squarely designed to frustrate the market innovation being put forward by Dr. Leeds and similar dentists and Smile Direct Club. Lastly, let me just briefly touch on the point about that we failed to avail ourselves of the issue of a pre-decisional rulemaking appearance. That fact is not in the record and so should not be considered. And second of all, that fact goes to a pre-decisional issue which has nothing to do with the North Carolina Dental Board and Mid-Cal requirements of active supervision of the actual conduct. So, you know, the bottom line is we don't think there was a conclusive determination. Because this came up on 12b-6, there will be an opportunity to revisit it and thus we don't think there's jurisdiction. But on the merits, the district court was plainly correct. Thank you. Thank you, Mr. Lemke. And we will now hear from Mr. Delrahim on behalf of the government. Amicus Curie. Good morning, your honors. May it please the court, I'm Macon Delrahim on behalf of the United States and the Federal Trade Commission. I'd like to address, with your permission, a few points on active supervision. And active supervision is required here because the complaint challenges an allegedly anti-competitive rule adopted and enforced by a professional board that is controlled by market participants. And the board has invoked the state action doctrine. The district court, in our view, has correctly applied the Supreme Court's decision in North Carolina Board of Dental Examiners by requiring both the clear articulation and active supervision prompts. The Alabama boards, the board members, their argument that their rule should be treated as equivalent to state legislation and thus not subject to either of those requirements is wrong. If every state board rule is treated as an act of the sovereign merely because the rule was adopted pursuant to a general statutory mandate or by following state law procedures, as the board seems to suggest, that would swallow, we believe, impermissibly the Supreme Court's direction in dental examiners. And here the board's argument is inconsistent with the Supreme Court's direction in at least two ways. First, it ignores the court's express holding in dental examiners that administrative boards who are controlled by market participants as they are here, unlike state legislation, is subject to the active supervision standard even when their mandate derives from the state statute that they operate within a statutory framework. Second, it violates the court's repeated instruction that the state action defense is disfavored and must be construed narrowly. The board members' proposed reinterpretation would dramatically broaden its scope. At the motion to dismiss stage... Counsel, this is Judge Corrigan. What about the board's argument that the way this litigation and others like it set up, you're countenancing an unwarranted intrusion into state sovereignty, that you're making the state provide justifications to private parties for its lawmaking and its regulatory making that's not required? What about the federalism issue with respect to this scenario? Judge Corrigan, that issue has been addressed repeatedly within the Supreme Court, and the two-part test of Mitchell and most recently revisited in dental examiners addresses, and it puts that test into the state action doctrine specifically to address whether or not the state's actions should overcome the broader Supreme Court-directed policy of competition. And here, we believe that it isn't intrusive. In fact, there is a policy with respect to boards that are controlled by active participants who might act in their own self-interest rather than acting to advance and implement a state-articulated policy to displace that competition. And therefore, the test is critical in order to determine whether or not when a state has delegated such regulatory powers to active participants, they are implementing such a policy which allows for this type of a defense to an otherwise anti-competitive conduct. And that's why this needs to be followed, and it has not been, by the actions of the Alabama board. This is Judge Corrigan again. I don't mean to take too much time, but I did, before you get away with your five minutes. I wanted to ask you about your... The DOJ is also involved in an appeal in a similar case before the 11th Circuit that was argued in May, Smile Direct versus Battle. And I read the opinion of Judge Ray below, and I know that was just argued in May. There's not been a decision. But do you view those two cases as similar or that they should come out the same or that the reasoning should be the same? Is there overlap between those two cases or not? Well, we believe that this case is even a more blatant illustration of the lack of the active supervision test here. The legislature did nothing at all, and the Legislative Services Agency did not and could not perform the substantive review of the board rule. In the Georgia case, as we argued and put the brief in, there was nothing wrong with the governor's review statute, but that the governor did not exercise active supervision in practice. And here, as the district court explained, there's a loophole in the Alabama review statute that allows the board rule to take effect without any supervision at all if the LSA merely finds that there's no significant effect of competition, and that's just the wrong focus. All right. Thank you, counsel. Thank you, Your Honor. And I believe Mr. Pate has reserved some time on behalf of the board. Yes, Your Honor, I have. I'd like to take a few minutes just to respond to some of these assertions. First, I would like to go to Judge Corrigan's point about the intrusiveness of this inquiry for purposes of federalism and state sovereignty. I mean, the notion that sending deposition notices and subpoenas to lawmakers and legislative services staff is not intrusive and is not essentially trying to peek under the hood of state sovereignty is just wrong. And that is why the court in NC Dental said the standard was realistic assurance and not real compliance, right? What needs to happen here and what the state of Alabama has done in its statutory scheme is provide the realistic assurance to this court and to the district court that we are going to immunize our boards and at the same time make sure that they are actively supervised. And that goes to the point you were making before, which is why are we focused so much on this singular transmission? We're not. We are focused on this court's review of the statutory scheme, and the transmission is merely proof that it happened. And looking at the transmission, which Mr. Lemke just talked about, and saying, well, it's obvious that it was not followed, this, that, and the other, the only thing that I agree with Mr. Lemke on is that the processes that the state of Alabama put in place were not followed. But they were followed by the board. They weren't followed by SmileDirect. Now, Mr. Lemke says that that is a fact that is outside the record, and that is not true. That is a judicially noticeable fact involving the publicly available minutes of the Board of Dental Examiners. SmileDirect was about to roll out a $1 billion IPO, and it couldn't be bothered to show up at the number one review mechanism put in place by the Alabama legislature to tell the board that, hey, this might affect our business model. Well, what they're asking is for the court to just assume that, not the court, that the board should have just somehow known that this facially neutral regulation would have affected its business model. And that can't be the case. The review mechanism that was put in place by the state of Alabama was sufficient. It provides realistic assurance to this court, and SmileDirect failed to avail itself of the very review mechanism that the state of Alabama put in place. And now it wants to come in through the back door and say, but the board didn't say that there was any anti-competitive effect. You know why? Because they didn't show up to say that there was an anti-competitive effect. So I just find the notion that they now get to intrude on state sovereignty and depose people at the legislative services agency to be completely antithetical to the realistic assurance standard that we both agree should apply under North Carolina Dental. Because to do so would be to completely upend the whole notion that states should, in fact, be taken at their word when they pass an antitrust review scheme, provided that they provide this court with realistic assurance. You know, I do want to mention just briefly about their appellate jurisdiction argument. Mr. Lemke cited two cases. The Muskogee case, that was an appeal involving Colorado River abstention and is utterly an apposite to anything having to do with Parker immunity. But with respect to the Swent case that he mentioned, that was a case in which they were talking about municipal immunity under Monell. But that court talked about that type of immunity being a mere defense to liability, not liability from suit. And so that is completely different than Parker immunity, which this court has held in diverse power and other cases, is immunity from suit. And that's why we are here, and that's why we have appealed from the motion to dismiss, telling this court that there really isn't more factual discovery that needs to happen, despite the impassioned pleas of our learned counsel on the other side. Because it is a review of the statutory scheme, it is a decision that realistic assurance has been provided. And the bottom line, Your Honors, is that this is really a dormant commerce clause case. It is not a Sherman Act case. And this is precisely why this case needs to be, that the district court needs to be reversed for its decision not to grant Parker immunity to the board at this stage. And if there's any other questions from the court, I'm happy to answer them. Otherwise, I will yield the balance of my time. All right. I think we have your argument, Mr. Pate. And thank you, counsel. Thank all of you for your arguments. We'll take the matter under advisement.